UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------

DANUTA SZEWCZYK,

                              Plaintiff,

          v.

THE CITY OF NEW YORK, DEPARTMENT OF
ENVIRONMENTAL PROTECTION, PETER
GORDON, JOHN DUNCOMBE, ZOE ANN
CAMPBELL, HERBERT ROTH, and SVETLANA
BRICHKO.

                              Defendants.

----------------------------------------------------------------

**MEMORANDUM & ORDER**
17-CV-01884 (MKB)

MARGO K. BRODIE, United States District Judge:

Plaintiff Danuta Szewczyk, proceeding *pro se*, commenced the above-captioned action on

April 3, 2017, and filed an Amended Complaint on October 6, 2017, against Defendants the City

of New York (the "City"), the Department of Environmental Protection ("DEP"),[1] Peter Gordon,

John Duncombe, Zoe Ann Campbell, Herbert Roth, and Svetlana Brichko, alleging

discrimination and retaliation based on her national origin, race, religion, gender, age, marital

status, and unemployment status, in violation of Title VII of the Civil Rights Act of 1964, 42

U.S.C. § 2000e *et seq.* ("Title VII"), the Age Discrimination in Employment Act of 1967, 29

U.S.C. § 621 *et seq.* ("ADEA"), the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101

---

[1] Defendants have not moved to substitute the City for DEP. *Ximines v. George Wingate High Sch.*, 516 F.3d 156, 160 (2d Cir. 2008) ("Section 396 of the Charter has been construed to mean that New York City departments, as distinct from the City itself, lack the capacity to be sued."); *cf. Ming Yen Hou v. New York City Dep't of Envtl. Prot.*, 321 F. App'x 60, 61–62 (2d Cir. 2009) (considering employment discrimination claims brought directly against DEP); *Moriates v. City of New York*, No. 13-CV-4845, 2016 WL 3566656, at *4 (E.D.N.Y. June 24, 2016) ("DEP is not an independently suable entity under the New York City Charter." (citation omitted)).

*et seq.* ("ADA"), New York State Human Rights Law ("NYSHRL"), and New York City Human Rights Law ("NYCHRL"). (Compl., Docket Entry No. 1; Am. Compl., Docket Entry No. 13.) Plaintiff also asserts common-law claims for slander and libel. (Am. Compl. 3.)

Defendants move to dismiss the Amended Complaint in part, specifically as to: (1) the NYSHRL and NYCHRL claims in their entirety, (2) the Title VII, ADEA, and ADA claims against individual Defendants Gordon, Duncombe, Campbell, Roth, and Brichko, (3) the Title VII, ADEA, and ADA claims to the extent they are time-barred, (4) the Title VII, ADEA and ADA retaliation and ADA discrimination claims in their entirety, and (5) the slander and libel claims.[2] (Defs. Mot. to Dismiss ("Defs. Mot."), Docket Entry No. 15; Defs. Mem. in Supp. of Defs. Mot. ("Defs. Mem.") 8–19, Docket Entry No. 18; Defs. Reply in Supp. of Defs. Mot. ("Defs. Reply"), Docket Entry No. 20.) For the reasons discussed below, the Court grants Defendants' partial motion to dismiss the Amended Complaint.

## I.   Background

The facts alleged in the Amended Complaint are assumed to be true for the purpose of deciding Defendants' motion. Because Plaintiff is proceeding *pro se*, the Court also considers and assumes the truth of Plaintiff's factual allegations in her opposition to the motion.[3]

Plaintiff is a Roman Catholic woman of Polish descent who was born in 1956. (Am.

---

[2] Defendants do not move to dismiss Plaintiff's Title VII and ADEA discrimination claims arising on or after July 3, 2015. Accordingly, the Court does not address the viability of these claims.

[3] *See, e.g., Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion." (citing *Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987))); *Small v. Ortlieb*, No. 10-CV-1616, 2012 WL 3229298, at *1 (E.D.N.Y. Aug. 6, 2012) ("[A]s part of this [c]ourt's duty to construe *pro se* pleadings liberally, the [c]ourt will take account of all the facts contained in both [plaintiff's] amended complaint and his opposition papers." (citation omitted)).

Compl. 3.)  She has two master's degrees, including a Master of Science in Civil Engineering from Poland.  (*Id.* at 4.)  In 2011, Plaintiff scored a 100 on the Department of Citywide Administrative Services' civil service examination 1036, placing 153rd out of 472 candidates. (*Id.* at 4, 7.)  Pursuant to the City's "civil service rule," vacancies may only be filled from a list comprised of individuals passing civil service examination 1036 (the "List").  (*Id.* at 4.)

From 2007 to early 2016, Plaintiff unsuccessfully applied for "Assistant Civil Engineering (ACE)" positions with various city agencies, including the DEP.  (*Id.*)  Plaintiff does not specify when and how many times she applied to the DEP, other than one application dated July 29, 2015.  (*Id.*)

Plaintiff alleges that DEP and other City agencies denied her employment because of her status as an unemployed, single, older, Polish, Roman-Catholic woman.  (*Id.* at 4, 7.)  In particular, Plaintiff alleges that the DEP and other City agencies harbored "animosity towards Polish Americans," (*id.* at 5), and favored "candidates from former Soviet Union Federations," (*id.* at 4–5).  She attributes this animosity to the mayor of the City, evinced by his failure to attend the "Pulaski Day Parade" in recent years, and the renaming of the "Kosciuszko bridge." (*Id.* at 5.)  The human resources departments and agency supervisors also allegedly favored candidates of their own ethnic groups over those of Polish descent.  (*Id.* at 7.)  Plaintiff also alleges that the City's allowance and organization of yoga classes has led employees to lose their "sensitivity to the needs of other human being[s]."  (*Id.* at 4.)  Due to these factors, engineers of Polish descent are "significantly underrepresented in City [government positions]," despite their superior qualifications to engineers from the "Soviet Union."  (*Id.* at 5.)

After interviews in September and November of 2015, Angela DeLillo, the Director for the Bureau of Water and Sewer Operation at the agency, hired Plaintiff as an ACE at DEP in a

probationary capacity for one year. (*Id.* at 6, 11, 14, 30.) On January 11, 2016, Plaintiff began officially working for the DEP. (*Id.*) Her work unit consisted of her supervisor Gordon, a white, German male, then in his forties, (*id.* at 12), and recently hired provisional employees Irina Dobson, a woman from the Soviet Union, (*id.* at 6–7, 13), and Duncombe, a then-twenty-eight year old, white male, (*id.* at 6–7). Duncombe was one of two chief engineers in Plaintiff's work unit but lacked the requisite expertise because he had a mechanical rather than civil engineering degree. (*Id.* at 9, 13.)

On April 26, 2016, the DEP terminated Plaintiff after an exit meeting. (*Id.* at 18.) Because Gordon refused to explain the basis of her termination., Plaintiff declined to sign the notice of termination. (*Id.* at 6.) On September 4, 2016, Plaintiff met with Roth, the DEP Human resources director, to discuss her termination. (*Id.* at 19.) Roth refused to resolve "the dispute" regarding her termination without litigation. (*Id.*)

Plaintiff alleges that Defendants "conspired against [her] and acted in [a] cold and unscrupulous way" towards her in order to "profit" from her eventual termination. (*Id.*) She claims that Defendants maintained a scheme to hire employees on a provisional basis to unlawfully bypass the civil service examination system and the List. (*Id.* at 7–8.) Under this scheme, Defendants hired "their own relatives, friends" and those of the same religious affiliation, fostering a climate of "nepotism, corruption, favoritism and discrimination." (*Id.* at 7–8.) Defendants also unlawfully hired these "provisional" employees for terms lasting longer than nine months. (*Id.* at 8.) Plaintiff alleges that Defendants purposefully omitted the names of provisional employees from required public lists to hide their scheme, in violation of a "transparency rule." (*Id.* at 7–8.)

According to Plaintiff, Gordon, in particular, harbored animus towards her. (*Id.* at 12.)

Gordon had not interviewed Plaintiff and did not like her because she was an "unemployed Polish woman older than h[im]." (*Id.* at 7–8, 16.) He favored "younger interns" and preferred hiring them as provisional employees. (*Id.* at 7–8.) During Plaintiff's three and a half-month period of employment, two older employees, aged sixty-seven and seventy respectively, retired. (*Id.*) Another employee aged fifty-five transferred to another unit in April of 2016. (*Id.*) Gordon also favored Brichko, a Jewish woman from the Soviet Union, and "conspired secretly" to give her "extra work and extra overtime pay." (*Id.*) In contrast, Gordon reprimanded Plaintiff for working late and for billing unapproved overtime hours. (*Id.*) Although Gordon claimed that DEP policies prohibit more than seven hours of work per day, Plaintiff alleges that other agency employees with different supervisors were allowed to work more than that and consequently earn more in salary. (*Id.* at 14.) Plaintiff also alleges that Defendants allowed other members of her work unit to stay late and bill overtime, while she was limited to seven hours of work per day because she overheard a secret discussion between Gordon and Bricko, detailing their conspiracy. (*Id.* at 12, 14.) Plaintiff claims that Defendants singled her out by denying her overtime and terminating her so that Gordon could balance the budget, in order to pay staff salary and others' overtime hours. (*Id.* at 13, 18.)

Plaintiff alleges that Duncombe was also motivated to discriminate against her and "participated" in her termination. (*Id.* at 9.) Duncombe was personally motivated by his status as a new, provisional employee, dislike for Polish people, German descent, recent marriage, and the need to take care of his future family. (*Id.*) Gordon also allegedly "manipulated" Duncombe to discriminate against Plaintiff by instilling fear that his job depended on it. (*Id.*) Duncombe's hiring specifically "clos[ed] the budget," leading to Plaintiff's termination. (*Id.* at 7.) In carrying out their scheme, Duncombe and Gordon filled out an "Appraisal Performance

Evaluation form" that mischaracterized Plaintiff's work performance. (*Id.* at 10.) Plaintiff was unaware of a negative performance report dated April 11, 2016, until after her termination. (*Id.* at 6.)

Plaintiff alleges further unfair treatment while employed by the DEP. (*Id.* at 14.) In addition to the pay disparities based on overtime hours, Plaintiff complains of the following treatment: (1) Gordon allowed Brichko but not her to make private calls on their cellular telephones; (2) Gordon had Duncombe reprimand her for using a restroom after work; (3) Gordon and Duncombe signed an evaluation form dated March 17, 2016 that inaccurately described her as "insubordinate[]" and her work as "unsatisfactory"; (4) Gordon complained to another white male employee that new employees were bothersome to him, and often remarked that "women are stealing from his pocket"; (5) the DEP employed a few of Gordon's relatives, and allowed them to work overtime; and (6) Gordon did not allow her to read reports and attend meetings about her projects as promised by DeLillo, who hired her, and instead canceled the projects. (*Id.* at 13, 16–19.) Plaintiff also alleges that Henry Yi, the counsel for DEP, misrepresented facts to the New York State Division of Human Rights ("NYSDHR"). (*Id.* at 16–19.) She also claims that the NYSDHR erred by crediting Defendants' arguments and dismissing her claims. (*Id.*)

Based on these facts, Plaintiff claims that Defendants discriminated against her on the basis of her race, national origin, religion, marital status, age, and disability, by failing to hire her, terminating her, and subjecting her to various differential treatment including in terms of pay and denial of training. (*Id.* at 7, 19.)

Over the years, Plaintiff has filed several charges and complaints of discrimination with the Equal Employment Opportunity Commission ("EEOC") and NYSDHR. (*Id.* at 4.) Plaintiff

has filed a number of claims against other City agencies for failure to hire, and bases her retaliation claim on those complaints. (*Id.* at 11.) She alleges that the City retaliated against the filing of those complaints by dismissing them in bad faith. (*Id.*)

Following her termination from the DEP, Plaintiff filed complaints with the EEOC and NYSDHR. (*Id.* at 4; NYSDHR Compl. dated Apr. 28, 2016 ("NYSDHR Compl."), annexed to Justin W. Reiter Decl. in Supp. of Def. Mot. ("Reiter Decl.") as Ex. 1, Docket Entry No. 17.)[4] In the NYSDHR complaint, Plaintiff asserted discrimination claims against the DEP on the basis of her age, religion, "genetic predisposition," marital status, national origin, sex, and sexual orientation. (NYSDHR Compl. 6.) She did not, however, assert a claim for discrimination based on her unemployment status. (*See generally id.*) The allegations in the NYSDHR complaint mirror those asserted in this action. (*Id.*)

## II. Discussion

### a. Standards of review

#### i. Rule 12(b)(1)

A district court may dismiss an action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) when the court "lacks the statutory or constitutional power to adjudicate it." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411, 416–17 (2d Cir. 2015) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)); *Shabaj v. Holder*, 718 F.3d 48, 50 (2d Cir. 2013) (quoting *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d

---

[4] The Court considers Plaintiff's EEOC and NYSDHR complaints attached as exhibits to Reiter's declaration because they are referenced in the Amended Complaint and are also integral to Plaintiff's claims. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230–31 (2d Cir. 2016) (holding courts may consider on a motion to dismiss "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference" and other documents "integral" to the complaint (citations omitted)).

635, 638 (2d Cir. 2005)); *see also Chau v. S.E.C.*, 665 F. App'x 67, 70 (2d Cir. 2016).

"[C]ourt[s] must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff,' but 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'" *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citations omitted), *aff'd*, 561 U.S. 247 (2010). As a result, courts may also "refer[] to evidence outside the pleadings" to evaluate subject matter jurisdiction. *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 223 (2d Cir. 2017) (quoting *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000)). Ultimately, "the party asserting subject matter jurisdiction 'has the burden of proving by a preponderance of the evidence that it exists.'" *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *Suarez v. Mosaic Sales Sols. US Operating Co., LLC*, 720 F. App'x 52, 53 (2d Cir. 2018).

### ii. Rule 12(b)(6)

In reviewing a motion to dismiss under Rule (12)(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint liberally, "accepting all factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor." *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018) (quoting *Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)); *see also Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009)); *see also Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Strs. Ret. Plan*

*v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717–18 (2d Cir. 2013). Although all

allegations contained in the complaint are assumed to be true, this principle is "inapplicable to

legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by

mere conclusory statements." *Iqbal*, 556 U.S. at 678.

In reviewing a *pro se* complaint, the court must be mindful that a plaintiff's pleadings

should be held "to less stringent standards than formal pleadings drafted by lawyers. *Erickson v.*

*Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–05,

(1976)); *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the

court "remain[s] obligated to construe a *pro se* complaint liberally").

### b. NYSHRL and NYCHRL discrimination claims for failure to hire, termination of employment, and retaliation

Defendants argue that Plaintiff's NYSHRL and NYCHRL claims are barred by the

election of remedies doctrine. (Defs. Mem. 8–10.) They contend that New York law precludes

Plaintiff from bringing any NYSHRL and NYCHRL claims that she raised previously with the

NYSDHR. (*Id.*) Defendants seek dismissal of Plaintiff's NYSHRL and NYCHRL

discrimination claims based on race, national origin, sex, marital status, age, religion, and the

retaliation claim for prior failures to hire. (*Id.* at 9 –10.)

Plaintiff argues that the election of remedies doctrine should not apply because the

NYSDHR "takes procedures and instructions from" European courts. (Pl. Opp'n to Def. Mot.,

("Pl. Opp'n") 6, Docket Entry No. 15.)

Under both the NYSHRL and the NYCHRL, an individual who files a complaint with the

NYSDHR is jurisdictionally barred from filing a lawsuit in state or federal court for the same

claims. *See* N.Y. Exec. Law § 297(9); N.Y.C. Admin. Code § 8–502(a); *Carris v. First Student, Inc.*, 682 F. App'x 30, 33 (2d Cir. 2017) (citing *Desardouin v. City of Rochester*, 708 F.3d 102, 106 (2d Cir. 2013)); *see also DuBois v. Macy's Retail Holdings, Inc.*, 533 F. App'x 40, 41 (2d Cir. 2013) ("Furthermore, the election of remedies doctrine under both the [NYSHRL] and [NYCHRL] precludes a plaintiff from pursuing his discrimination claims in a court of law when the same claims were previously brought before a local administrative agency." (citing N.Y. Exec. Law § 297(9) and N.Y.C. Admin. Code § 8–502)). Courts have interpreted "same claims" as those arising out of the same incidents or "operative events" from which the NYSDHR complaint was based. *Chakraborty v. Soto*, No. 16-CV-9128, 2017 WL 5157616, at *81 (S.D.N.Y. Nov. 6, 2017); *see, e.g.*, *Yong Chul Son v. Chu Cha Lee*, 559 F. App'x 81, 82 (2d Cir. 2014) (affirming dismissal of NYSHRL and NYCHRL claims when NYSDHR had reviewed NYSHRL and Title VII claims on same facts); *Carroll v. U.P.S.*, No. 00-CV-7032, 2000 WL 1185583, at *3 (2d Cir. Aug. 21, 2000) ("Because [plaintiff's] two sets of claims arise out of the same group of facts, the matter before this court is jurisdictionally barred."); *McCalla v. City of New York*, No. 15-CV-8002, 2017 WL 3601182, at *37 (S.D.N.Y. Aug. 14, 2017) ("[The] election of remedies [doctrine], is not limited to the precise claims brought in the administrative proceeding, but extends to all claims arising out of the same events." (citation and internal quotation marks omitted)), *report and recommendation adopted*, No. 15-CV-8002, 2017 WL 4277182 (S.D.N.Y. Sept. 22, 2017). Because the bar is jurisdictional, claims dismissed pursuant to the doctrine "must be dismissed under Fed. R. Civ. P. 12(b)(1) rather than 12(b)(6)." *Higgins v. NYP Holdings, Inc.*, 836 F. Supp. 2d 182, 187 (S.D.N.Y. 2011) (citing *Moodie v. Fed. Reserve Bank*, 58 F.3d 879, 882 (2d Cir. 1995)).

Courts recognize two primary exceptions to the election of remedies doctrine.[5]  *See York v. Ass'n of the Bar*, 286 F.3d 122, 127 n.2 (2d Cir. 2002); *Levi v. RSM McGladrey, Inc.*, No. 12-CV-8787, 2014 WL 4809942, at *3 n.4 (S.D.N.Y. Sept. 24, 2014).  "First, where a complaint filed with the administrative agency is dismissed for administrative convenience rather than on the merits, a plaintiff is not barred from filing a lawsuit in federal court."  *Williams*, 916 F. Supp. 2d at 522–23 (citation omitted); *York*, 286 F.3d at 127 n.2.  The second exception "applies when a claim is filed directly with the EEOC rather than with the [NY]SDHR, and is only thereafter filed with the [NY]SDHR by the EEOC in accordance with Title VII requirements that all complaints filed with the EEOC be referred to the local agency."  *Williams*, 916 F. Supp. 2d at 522–23 (citation omitted); *York*, 286 F.3d at 127 n.2.

The election of remedies doctrine bars Plaintiff's NYSHRL and NYCHRL claims.   In the April 28, 2016 NYSDHR complaint, Plaintiff relied on the same operative facts as in this action in asserting NYSHRL and NYCHRL discrimination and retaliation claims.  Plaintiff focused on the City's refusals to hire her between the years 2007 and 2016, the hiring of less qualified individuals, Gordon's animus towards her, the favored treatment of co-workers, and her alleged unlawful termination.  The causes of action in the NYSDHR complaint also mirror those asserted in this action, except for a discrimination claim based on unemployment status asserted for the first time in this action.  Although not specifically included in the NYSDHR complaint, Plaintiff's claim based on unemployment status is nevertheless premised on the same incidents that formed the basis of the failure to hire claims in the NYSDHR action.  *See Carroll*, 2000 WL

---

[5]  Section 297(9) of the New York Executive Law lists the administrative convenience, untimeliness, and annulment of the election of remedies as exceptions.  N.Y. Exec. Law § 297(9); *Jiles v. Rochester Genesee Reg'l Transportation Auth.*, No. 17-CV-06345, 2018 WL 3432836, at *3 (W.D.N.Y. July 10, 2018).

1185583, at *3 ("A '[c]laimant cannot avoid the jurisdictional bar [presented by § 297(9)] by merely adding additional elements of damage arising out of the same underlying conduct [or] by changing his legal theory.'" (quoting *Bhagalia v. State*, 644 N.Y.S.2d 398, 399 (App. Div. 1996))); *Rosario v. New York City Dep't of Educ.*, No. 10-CV-6160, 2011 WL 1465763, at *2 (S.D.N.Y. Apr. 15, 2011) ("'[A]ttempts to recover for [the same] injuries under . . . slightly different labels' are subject to dismissal." (quoting *Horowitz v. Aetna Life Ins.*, 539 N.Y.S.2d 50, 52 (App. Div. 1989))). Nor do any exceptions apply. Plaintiff's claims were dismissed on the merits, (*see* Determination and Order regarding NYSDHR Compl., annexed to Reiter Decl as Ex. 2, Docket Entry No. 17), and were filed simultaneously with both the EEOC and NYSHRL, *see York*, 286 F.3d at 127 n.2 (holding that second "exception applies only when a charge is filed first with the EEOC, which then files it by automatic referral with the NYSDHR") (citations omitted). The Court therefore dismisses all of Plaintiff's NYSHRL and NYCHRL claims for lack of jurisdiction pursuant to the election of remedies doctrine.

### c. Title VII, ADEA, and ADA claims against individual Defendants Gordon, Duncombe, Brichko, Roth, and Campbell

Defendants argue that the Court should dismiss Gordon, Duncombe, Brichko, Roth, and Campbell from this action because there is no individual liability under Title VII, ADEA and ADA. (Defs. Mem. 11–12.)

Plaintiff offers no substantive response, and instead argues that the individual Defendants' "acts should not be hidden, but be exposed *pro-publico bono*." (Pl. Opp'n 6.)

Individuals are not subject to liability under Title VII, the ADA, and the ADEA. *Cayemittes v. City of New York Dep't of Hous. Pres. & Dev.*, 641 F. App'x 60, 61–62 (2d Cir. 2016) ("Title VII does not provide for individual liability." (first citing *Raspardo v. Carlone*, 770 F.3d 97, 113 (2d Cir. 2014); and then citing *Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir.

2010) (per curiam))); *Cherry v. Toussaint*, 50 F. App'x 476, 477 (2d Cir. 2002) ("[T]he ADEA

precludes individual liability." (citation omitted)); *see also Spiegel*, 604 F.3d at 79 (holding that

the retaliation provision of the ADA does not provide for individual liability);[6] *Caesar v.*

*Riverbay Corp.*, No. 15-CV-8911, 2017 WL 6887597, at *4 n.7 (S.D.N.Y. Dec. 27, 2017)

(holding that Title VII, the ADEA, and the ADA does not provide individual liability).

Accordingly, the Court dismisses Plaintiff's Title VII, ADEA, and ADA claims against

individual Defendants Gordon, Duncombe, Campbell, Roth, and Brichko.

### d. Plaintiff's Title VII, ADEA, and ADA claims are partially time-barred

Defendants argue that Plaintiff's Title VII, ADEA, and ADA discrimination and

retaliation claims are time-barred to the extent they arise from events prior to July 3, 2015 — 300

days before the filing of the EEOC charge on April 28, 2016. (Defs. Mem. 12.) As a result,

Defendants argue that only the claims "pertaining to (1) DEP's decision not to hire Plaintiff on

September 15, 2015 and (2) DEP's decision to terminate her employment on April 26, 2016" are

timely. (*Id.* at 13.)

Plaintiff argues that the 300-day limitation from the filing of an EEOC charge should be

---

[6] Although the Second Circuit has held that there is no individual liability under the ADA's retaliation provision, *see Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010) (per curiam), it has not reached the question with respect to the ADA's other provisions. However, many district courts in this Circuit, including this Court, have determined that the ADA's other provisions likewise do not provide for individual liability. *Davis v. New York City Dep't of Corr.*, No. 17-CV-3863, 2017 WL 5634123, at *3 (E.D.N.Y. Nov. 22, 2017); *Castro v. City of New York*, 24 F. Supp. 3d 250, 259 (E.D.N.Y. 2014) (collecting cases); *see also Gomez v. N.Y.C. Police Dep't*, No. 15-CV-4036, 2016 WL 3212108, at *7 (S.D.N.Y. June 7, 2016) ("[T]here is no individual liability under the ADA." (citing *Lane v. Maryhaven Ctr. of Hope*, 944 F. Supp. 158, 162 (E.D.N.Y. 1996))); *Pierce v. Fordham Univ., Inc.*, No. 15-CV-4589, 2016 WL 3093994, at *6 (S.D.N.Y. June 1, 2016) (noting that "[i]t is well established that there is no individual liability under the ADA" (alteration in original) (quoting *Nelson v. City of New York*, No. 11-CV-2732, 2013 WL 4437224, at *14 (S.D.N.Y. Aug. 19, 2013))).

assessed from November 5, 2014.[7] (Pl. Opp'n 6.)

Before filing a Title VII, ADEA, or ADA action in federal court, a plaintiff must timely file charges of employment discrimination with the EEOC. 42 U.S.C. § 2000e-5(e)(1); 42 U.S.C. § 12117(a); 29 U.S.C. § 626; *Rasko v. New York City Admin. for Children's Servs.*, 734 F. App'x 52, 54 (2d Cir. 2018) ("Under Title VII, a plaintiff in New York must file a complaint with the EEOC within 300 days of a discriminatory act." (first citing 42 U.S.C. 2000e-5(e)(1) and then citing *Pikulin v. City Univ. of New York*, 176 F.3d 598, 599 (2d Cir. 1999)); *Boonmalert v. City of New York*, 721 F. App'x 29, 31 (2d Cir. 2018) ("A plaintiff seeking to recover under the ADEA must file a discrimination charge with a state agency within 300 days of the occurrence of the allegedly unlawful employment practice." (quoting *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007)); *Roy v. Buffalo Philharmonic Orchestra*, 684 F. App'x 22, 23 (2d Cir. 2017) ("A plaintiff raising an ADA claim of discrimination must exhaust all administrative remedies by filing an EEOC charge within 300 days of the alleged discriminatory conduct." (citing *Tewksbury v. Ottaway Newspapers*, 192 F.3d 322, 325 (2d Cir.

---

[7] The Court has no basis to apply the 300-day limitation from November 5, 2014 as Plaintiff advocates. Plaintiff appears to rely on charges Nos. 520-2015-00362 and 520-2015-00363, filed against the New York City Fire Department and Department of Citywide Administrative Services, respectively, on November 5, 2014. (Am. Compl. 4.) However, Plaintiff failed to attach those EEOC charges or provide any allegations as to the receipt of right to sue letters from the EEOC. (*See generally id.*) Without such information, the Court cannot assess whether any claims based on those charges were filed within the required ninety days upon receipt of right to sue letters. *See Ko v. JP Morgan Chase Bank, N.A.*, 730 F. App'x 62, 63 (2d Cir. 2018) ("Both the ADEA and Title VII provide that an employment discrimination suit must be filed within [ninety] days of the receipt of the right to sue letter from the EEOC." (citation omitted)); *Virk v. Maple-Gate Anesthesiologists, P.C.*, 657 F. App'x 19, 23 (2d Cir. 2016) ("Title VII and the ADA provide that within [ninety] days of receipt of a right-to-sue letter, '*a civil action* may be brought. . . .'" (citation omitted)). Indeed, Plaintiff has already asserted claims based on charge No. 520-2105-00363 in another action before this Court, which claims have since been dismissed. (*See* Compl. 5, Docket Entry No. 1, *Szewczyk v. City of New York*, No. 15-CV-918.) The Court therefore cannot rely on the November 5, 2014 date advocated by Plaintiff.

1999)).  In New York, a federal employment discrimination claim is time-barred unless the plaintiff first files an EEOC charge within 300 days of the alleged discrimination.  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 79 (2d Cir. 2015) (quoting 42 U.S.C. § 2000e-5(e)(1)); *McGullam*, 609 F.3d at 75.  This requirement is analogous to a statute of limitations.  *Vega*, 801 F.3d at 79; *Patterson*, 375 F.3d at 220 (dismissing as untimely claims based on conduct that occurred more than 300 days prior to the filing of EEOC charge).

The statute of limitations may be tolled by the continuing violation exception, equitable tolling, equitable estoppel, or waiver.  *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 385 (2d Cir. 2015) ("[F]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that . . . is subject to waiver, estoppel, and equitable tolling." (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982))); *Briones v. Runyon*, 101 F.3d 287, 290 (2d Cir. 1996) ("[T]he statutory requirement for filing is analogous to a statute of limitations and is, therefore, considered subject to waiver, estoppel, and equitable tolling." (citation omitted)).

Plaintiff fails to provide any basis to conclude that the 300 day limitation should not be assessed from the EEOC charge filed on April 28, 2016.  To the extent Plaintiff seeks to argue that the continuing violation exception applies to Defendants' failures to hire her, that "doctrine does not apply to discrete acts of discrimination or retaliation, 'such as termination, failure to promote, denial of transfer or refusal to hire.'"  *Staten v. City of New York*, 726 F. App'x 40, 43 (2d Cir. 2018) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)).  Plaintiff's Title VII, ADEA, and ADA claims are therefore limited to those arising on or after July 3, 2015.

### e. ADA disability discrimination claim

Defendants argue that the Court should dismiss Plaintiff's ADA discrimination claim because Plaintiff fails to allege she suffers from or was perceived to have a disability. (Defs. Mem. 18.) Construing the Amended Complaint liberally, Defendants assert that Plaintiff may be arguing that unemployment status is a disability. (*Id.*) Defendants argue, however, that unemployment status is not a disability within the meaning of the ADA. (*Id.*)

Plaintiff does not respond to this argument. (*See generally* Pl. Opp'n.)

ADA employment discrimination claims are assessed using the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Littlejohn v. City of New York*, 795 F.3d 297, 307–08 (2d Cir. 2015) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000)) (discussing burden-shifting); *Davis v. New York City Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015) (applying McDonnell Douglas framework to ADA discrimination claim). Under the framework, a plaintiff must first establish a prima facie case of discrimination by showing that: "(1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by her employer; (3) she was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) she suffered an adverse employment action; and (5) the adverse action was imposed because of her disability." *Davis*, 804 F.3d at 235; *Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 21 (2d Cir. 2015). If the plaintiff meets this "minimal" burden, *Holcomb v. Iona Coll.*, 521 F.3d 130, 139 (2d Cir. 2008), a "temporary presumption" of discrimination arises, and the burden shifts to the defendant-employer to articulate a legitimate, nondiscriminatory reason for the challenged conduct, *Vega*, 801 F.3d at 84 (quoting *Littlejohn*, 795 F.3d at 307, 311). If the defendant-employer articulates such a reason, the burden shifts

back to the plaintiff to show that the defendant-employer's reason was pretext for the discrimination. *Id.* at 83.

At the pleading stage, however, a plaintiff need not prove discrimination or even allege facts establishing every element of the *McDonnell Douglas* prima facie case. *Littlejohn*, 795 F.3d at 311; *see Doe v. Columbia Univ.*, 831 F.3d 46, 55 (2d Cir. 2016) (discussing *McDonnell Douglas* burden at the pleading stage in the context of Title VII cases); *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 71 (2d Cir. 2006) ("[T]he requirements for establishing a prima facie case under *McDonnell Douglas* [do not] apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." (second alteration in original) (quoting *Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002))). Instead, a plaintiff need only plead facts sufficient to give "plausible support" to the plaintiff's "minimal" initial burden, which is governed by the statute under which she brings her claims. *Vega*, 801 F.3d at 84 (quoting *Littlejohn*, 795 F.3d at 307, 312); *see also Javed v. Medgar Evers Coll. of City Univ. of New York*, 724 F. App'x 73, 74 (2d Cir. 2018) (citation omitted). The allegations must "put forward 'at least minimal support for the proposition'" that the adverse employment action was "motivated by [the employer's] discriminatory intent." *Javed*, 724 F. App'x at 74 (quoting *Vega*, 801 F.3d at 85); *see also Vega*, 801 F.3d at 87 ("[A] plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision.").

The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Major life activities include standing, lifting, bending, speaking, and working. *Id.* § 12102(2)(A); *see also Dooley*,

636 F. App'x at 21; *Parada v. Banco Industrial De Venezuela, C.A.*, 753 F.3d 62, 66 (2d Cir. 2014).

Plaintiff fails to allege any disability within the meaning of the ADA. Unemployment status does not qualify as a disability under the ADA. Plaintiff also has not alleged that anyone perceived her as disabled in any way. *See Holt v. Sams Club*, 579 F. App'x 36, 37 (2d Cir. 2014) (affirming dismissal of complaint for failure to state a claim where plaintiff "failed to allege that she was denied a promotion, that she participated in a protected activity, or that she was fired *because of a disability*" (emphasis added)); *see also Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, No. 08-CV-442, 2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014) (finding claim to be abandoned where plaintiff "fail[ed] to address the defendant's arguments in support of dismissing that claim" (citation omitted)).

The Court therefore dismisses Plaintiff's ADA discrimination claim in its entirety.

### f. Title VII, ADEA, and ADA retaliation claims

Defendants argue that Plaintiff fails to state a claim for retaliation under Title VII, the ADEA, and ADA. (Defs. Mem. 15–17.) They contend that Plaintiff failed to plead that DEP "took any adverse employment actions against her because of her previous complaints against other City agencies." (*Id.* at 17 (emphasis omitted).) Defendants also argue that Plaintiff failed to allege that the DEP was even aware of the prior complaints against the other City agencies. (*Id.*)

Plaintiff asserts that she has "clearly stated the retaliation claim" in the Amended Complaint, and that in the "era of [the] internet it is hard to believe that Defendants did not learn anything about [her] previous complaints." (Pl. Opp'n 6.)

Retaliation claims are analyzed under the *McDonnell Douglas* burden-shifting framework

outlined above. *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018). "[F]or a retaliation claim to survive a motion for judgment on the pleadings or a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated — or took an adverse employment action — against him, (2) because he has opposed any unlawful employment practice." *Id.* at 625 (quoting *Vega*, 801 F.3d at 90). To adequately plead the second prong "which goes to causation, . . . the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Id.* at 625 (quoting *Vega*, 801 F.3d at 90–91). "But-for' causation does not, however, require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Id.* (quoting *Vega*, 801 F.3d at 90–91); *see also Brainard v. City of Topeka*, 597 F. App'x 974, 981 (10th Cir. 2015) ("[R]etaliation claims under the ADEA and Title VII require 'but-for' causation."); *Johnson v. Lew*, No. 13-CV-1072, 2017 WL 3822047, at *14 n.29 (N.D.N.Y. Aug. 30, 2017) ("A]lthough the Second Circuit has not definitively determined whether the 'but for' causation standard applies to retaliation claims under the ADEA, several courts in this Circuit accept that, in light of recent Supreme Court decisions, the 'but for' analysis is appropriate." (citation omitted)); *see also Flieger v. E. Suffolk BOCES*, 693 F. App'x 14, 18 (2d Cir. 2017) ("[T]here is an unsettled question of law in this Circuit as to whether a plaintiff must show, in order to succeed on her ADA retaliation claim, that the retaliation was a 'but for' cause of the adverse employment act or merely a 'motivating factor.'"). "Causation may be shown by direct evidence of retaliatory animus or inferred through temporal proximity to the protected activity." *Duplan*, 888 F.3d at 625 (citing *Vega*, 801 F.3d at 90–91).

Plaintiff fails to allege an actionable claim for retaliation against Defendants. As an initial matter, the parties agree that Plaintiff's EEOC charges and NYSDHR complaints are the

only alleged protected activities.  (*See* Pl. Opp'n ¶ Q (referencing only NYSDHR complaints).)

As discussed above, Plaintiff's Title VII, ADEA, and ADA claims are also limited to causes of

action arising from incidents on or after July 3, 2015.  Plaintiff does not provide any non-

conclusory allegations that the filing of the NYSDHR complaints led to later adverse

employment actions against her within the relevant period.[8]  While those NYSDHR complaints

may describe *prior* adverse employment actions, the denial of those claims by the NYSDHR are

not themselves adverse employment actions.[9]  *Cf. Cortes v. MTA New York City Transit*, 802

F.3d 226, 233 (2d Cir. 2015) (considering whether the filing of NYSDHR complaint was

followed by an adverse employment action).  The Court therefore dismisses Plaintiff's retaliation

---

[8]  Plaintiff states that DEP terminated her in retaliation.  (*See* Am. Compl. 18 ("Because of that position (denial) and to my surprise the drastic act of retaliation committed against me (termination in four months) . . . .").)  This single, unclear sentence is insufficient to state a plausible claim that DEP terminated Plaintiff for complaints or charges to the NYSDHR and EEOC based on protected characteristics under Title VII, the ADEA, and the ADA.  Although temporal proximity exists between the latest of the EEOC charge on January 8, 2016 against the Department of Transportation, (*id*. 4), and her termination on April 26, 2016, Plaintiff fails to plead facts allowing for an inference of corporate knowledge of that filing.  Plaintiff fails to provide any allegations to allow the Court even to "assume" that DEP would have corporate knowledge of filings against the Department of Transportation.  *Patane v. Clark*, 508 F.3d 106, 115 (2d Cir. 2007).  In *Patane*, the Second Circuit appears to have discussed the possibility of assuming *actual* knowledge under certain circumstances after concluding there were sufficient allegations to support corporate knowledge.  *See id.*; *Wilson v. Ontario Cnty. Sheriff's Dep't*, No. 12-CV-06706, 2014 WL 3894493, at *16 (W.D.N.Y. Aug. 8, 2014) ("In order to plead a retaliation complaint . . . , [p]laintiff must allege that [defendant] had 'general corporate knowledge' that she engaged in protected activity."); *but see Milne v. Navigant Consulting*, No. 08-CV-8964, 2010 WL 4456853, at *6 (S.D.N.Y. Oct. 27, 2010) ("[W]e note that while plaintiff has not actually demonstrated general corporate knowledge, the Second Circuit has said that it is not inappropriate to assume compliance with the knowledge requirement in certain situations, particularly on a motion to dismiss." (citing *Patane*, 508 F.3d at 115)).

[9]  Plaintiff does not allege that Defendants retaliated against her for the prior EEOC and NYSDHR complaints by failing to hire her on September 15, 2015.  (*See generally* Am. Compl.; Pl. Opp'n.); *see also Acha v. Beame*, 570 F.2d 57, 65 (2d Cir. 1978) ("[A] violation of Title VII would be found to occur if, absent [retaliation], a woman would have been hired earlier than her actual date of appointment.").

claims.[10]

### g. Slander and libel claim

Defendants argue that the Court should dismiss Plaintiff's slander and libel claim because of the lack of any supporting factual allegations. (Defs. Mem. 18–19.) They contend that the Amended Complaint fails to specify the alleged defamatory statements, the date of their publication, and the identities of third parties to whom the statements were made. (*Id.*) Defendants also assert that Plaintiff fails to allege whether she "complied with applicable notice of claim requirement[s]." (*Id.* at 19.) Defendants further argue that, regardless of the sufficiency of the allegations, the one-year statute of limitations for intentional torts precludes any claims arising from defamatory statements published prior to April 3, 2016, one year prior to the filing of the Complaint. (*Id.*)

Plaintiff opposes the dismissal of her defamation claim on the grounds that she had not raised a similar claim to the NYSDHR. (Pl. Opp'n 3.) She reasserts that her work evaluations contained misrepresentations and fabrications. (*Id.*) Plaintiff also asserts that Defendants hid the evaluations from her and that she did not find out about them until she received a report from the NYSDHR. (*Id.*)

"Defamation . . . is the invasion of the interest in a reputation and good name" and "consist[s] of the twin torts of libel and slander." *Albert v. Loksen*, 239 F.3d 256, 265 (2d Cir.

---

[10] The ADA retaliation claim fails for an additional reason. As discussed in addressing the ADA discrimination claim, Plaintiff has not alleged any disability or perceived disability. She could not have therefore been retaliated against because of her disability. *See Flieger v. E. Suffolk BOCES*, 693 F. App'x 14, 18 (2d Cir. 2017) ("Activities protected by the ADA include complaints of ADA discrimination, including complaints on a good faith belief that the employer's actions violated the ADA, and requests for reasonable accommodations." (citations omitted)).

2001) (citations omitted). "Generally, spoken defamatory words are slander; written defamatory words are libel."[11] *Id.* (citations omitted). Defamatory statements "expose[] an individual 'to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation or disgrace, or . . . induce an evil opinion of one in the minds of right-thinking persons, and . . . deprive[s] one of their confidence and friendly intercourse in society.'" *Chau v. Lewis*, 771 F.3d 118, 127 (2d Cir. 2014) (quoting *Kimmerle v. N.Y. Evening Journal, Inc.,* 262 N.Y. 99, 102 (1933)).

"To make a claim for defamation under New York law, the plaintiff must allege '(1) a false statement that is (2) published to a third party (3) without privilege or authorization, and that (4) causes harm, unless the statement is one of the types of publications actionable regardless of harm.'" *Cain v. Atelier Esthetique Inst. of Esthetics Inc.*, 733 F. App'x 8, 11 (2d Cir. 2018) (quoting *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017)). "With respect to the fourth element, the alleged harm must 'consist of the loss of something having economic or pecuniary value which must flow directly from the injury to reputation caused by the defamation.'" *Id.* (quoting *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 179 (2d Cir. 2000) (citation and internal quotation marks omitted)). "'Defamation *per se* absolves a plaintiff of the requirement to plead special damages' because 'the law presumes that damages will result.'" *Id.* (citations omitted). "This presumption of damages only applies to limited categories of statements, including statements that 'tend to injure [a plaintiff's] trade, business or profession.'" *Id.* (citation omitted).

Prior to asserting a claim for defamation against a municipal defendant or its employees,

---

[11] Because Plaintiff is complaining about written statements, the Court understands Plaintiff to be alleging a libel claim.

a plaintiff must serve a notice of claim within ninety days after the claim's accrual. *Hone v. City of Oneonta*, 69 N.Y.S.3d 136, 139 (App. Div. 2018); *Garcia v. City of New York*, No. 15-CV-7470, 2018 WL 2085335, at *6 (S.D.N.Y. May 3, 2018) (citing N.Y. Gen. Mun. Law §§ 50-e, 50-i). "A cause of action for defamation accrues when the allegedly defamatory statements are made." *Hone*, 69 N.Y.S.3d at 139 (citation omitted). "Failure to comply with [notice of claim] requirements ordinarily requires a dismissal for failure to state a cause of action." *Cole-Hatchard v. Hoehmann for Town of Clarkstown, New York*, No. 16-CV-5900, 2017 WL 4155409, at *9 (S.D.N.Y. Sept. 18, 2017).

Plaintiff fails to allege compliance with the notice of claim requirements for her defamation claim. Instead, Plaintiff only alleges that she had no notice of the purported defamatory statements until July of 2016. (Pl. Opp'n 3.) Even if true, Plaintiff should have filed a request for leave to serve a late notice of claim.[12] *See Hardy v. New York City Health & Hosp. Corp.*, F.3d 789, 795 (2d Cir. 1999) (explaining continuously hospitalized plaintiff could have still requested leave to serve a late notice of claim); *see also Hanly v. Powell Goldstein, LLP*, 290 F. App'x 435, 439 (2d Cir. 2008) ("New York courts consistently have declined to recognize a so-called "discovery rule" for libel claims." (citations omitted)). The Court therefore dismisses Plaintiff's defamation claim.

---

[12] The majority of district courts in the Second Circuit also require plaintiffs to seek permission to file late notice of claims in state court. *See Bradshaw v. City of New York*, No. 15-CV-2166, 2017 WL 6387617, at *4 (E.D.N.Y. Aug. 22, 2017) ("Federal courts do not have jurisdiction to hear state law claims brought by plaintiffs who have failed to comply with the notice of claim requirement, nor can a federal court grant a plaintiff permission to file a late notice of claim." (citation omitted)); *Humphrey v. Cnty. of Nassau*, No. 06-CV-3682, 2009 WL 875534, at *21 (E.D.N.Y. Mar. 30, 2009) (collecting cases); N.Y. Gen. Mun. Law § 50-e-7 ("All applications under this section shall be made to the supreme court or to the county court.").

### III. Conclusion

For the foregoing reasons, the Court grants Defendants' partial motion to dismiss. The Court dismisses the NYCHRL and NYSHRL claims for lack of jurisdiction pursuant to Rule 12(b)(1) of Federal Rules of Civil Procedure. The Court also dismisses pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure: (1) the Title VII, ADEA, and ADA claims against the individual Defendants Gordon, Duncombe, Campbell, Roth, and Bricko; (3) the ADA discrimination claim; (4) the Title VII, ADEA, and ADA retaliation claims; and (5) the slander and libel claims. The Clerk of the Court is directed to remove the individual Defendants from the docket because all claims against them have been dismissed.

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: September 28, 2018
      Brooklyn, New York